# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-0800V
### Filed: January 30, 2020
UNPUBLISHED

|  |  |
|---|---|
| DARON NELSON,<br><br>                        Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Special Master Horner<br><br>Tetanus diptheria and acellular pertussis vaccine; Tdap; transverse myelitis; neuromyelitis optica; attorney's fees and costs; denial; reasonable basis; onset |

*Joseph Vuckovich, Maglio Christopher, and Toale, PA, Washington, DC, for petitioner.*
*Althea Walker Davis, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

Petitioner filed a petition for compensation on June 14, 2017 alleging that a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on January 13, 2015, caused or significantly aggravated his transverse myelitis ("TM") and neuromyelitis optica ("NMO").  (ECF No. 1.)  The petition was dismissed on June 6, 2019.  On September 11, 2019, petitioner filed the current motion for attorneys' fees and costs.  For the reasons discussed below, the motion is denied.

### I.    Procedural History

On August 23, 2017, Special Master Millman issued an order identifying and discussing the issues presented by the petition and the medical records, including significant questions regarding the onset of petitioner's alleged injuries.  (ECF No. 9.)  On September 21, 2017, a status conference was held at which the parties discussed

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

Special Master Millman's order.  On July 6, 2018, respondent filed a Rule 4(c) report recommending against compensation.  (ECF No. 22.)  That same day, Special Master Millman ordered petitioner to file an expert report, the expert's CV, and any medical literature cited in the report.

However, on May 5, 2019, petitioner filed a status report indicating that he would not be filing an expert report and requesting additional time to file either a motion for a ruling on the record or a motion for a decision denying compensation.  (ECF No. 26.) On June 3, 2019, petitioner filed a motion for a decision denying compensation.  (ECF No. 28.)  Subsequently, on June 4, 2019, this case was assigned to my docket.  (ECF No. 30.)  I granted petitioner's motion and issued a decision dismissing the petition on June 6, 2019.  Judgment was entered on July 11, 2019.  (ECF Nos. 31, 33.)

On September 11, 2019, petitioner filed this motion for attorneys' fees and costs, requesting $19,572.10 in attorneys' fees and $688.49 in costs.  (ECF No. 36.)  On October 23, 2019, respondent filed an opposition to petitioner's request for fees and costs, alleging that petitioner failed to establish a reasonable basis for his claim.  (ECF No. 37.)  In his reply, petitioner maintained that he provided objective support for his claim and had reasonable basis when the claim was filed.  (ECF No. 38.)

## II.    Fact Summary

Four months prior to vaccination, on September 3, 2014, petitioner underwent a work-related medical examination.  (Ex. 3, pp. 19-21.)  No health concerns were noted, but he was only cleared to work for three months due to elevated blood glucose.  (*Id*. at 21.)  About two months prior to vaccination, on November 12, 2014, petitioner was diagnosed with diabetes with neurological manifestations, after reporting progressive tingling from his toes up to his legs, lower chest, and hands for the previous 18 months. (Ex. 6, p. 13.)

Subsequently, petitioner received the Tdap vaccination forming the basis for his claim on January 13, 2015.  (ECF No. 1, p. 1.)  Three months later, on March 5, 2015, petitioner went for a diabetes follow up visit at Health Clinics of Utah, where he reported "increased difficulty with numbness and tingling of his feet, legs, chest, and the thumb and index fingers of both hands."  (Ex. 6, p. 16.)  An additional three months later, on June 10, 2015, he saw Dr. Corey Sondrup, DC and reported neuropathy in his feet beginning "2.5 yrs ago."  (Ex. 2, p. 2.)  In December of that same year, petitioner again reported tingling and weak grip strength.  (Ex. 6, p. 18.)

The next year, on June 22, 2016, petitioner visited Ogden Clinic for neuropathy. He reported that the onset of his numbness and tingling, which he now described as including "electrical flutters," was "three years ago" and that it occurred from his feet up through his hand. (Ex. 5, p. 31.)  On July 18, 2016, petitioner received an MRI exam which demonstrated "abnormal signal throughout the cervical spinal cord." (*Id.* at 42.) On July 26, 2016, he was diagnosed with transverse myelitis with possible neuromyelitis optica in addition to his ongoing neuropathy, which was still characterized as "likely diabetic neuropathy." (*Id.* at 23-26.)

## III.    Party Positions

In his opposition to petitioner's request for fees and costs, respondent argues that petitioner's medical records present two possibilities.  Petitioner "either suffered the onset of his alleged vaccine-related injuries prior to his vaccination, in which case he could not prevail on the claims in the petition, or his alleged injuries began more than 18 months after vaccination, in which case he would have to establish that the onset of his symptoms occurred within a reasonable time frame to ascribe causation." (ECF No. 37, p. 12.) In response, petitioner highlights his March 5, 2015 visit, which occurred 52 days after the vaccination date, and asserts that his symptoms of TM and/or NMO "either began or became significantly more severe" on that date.  (ECF No. 38, p. 2.)

## IV.    Legal Standard

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  In this case, respondent does not challenge petitioner's good faith in bringing this claim.

"Reasonable basis" however, is an objective standard.  Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in his claim.  *See Turner*, 2007 WL 4410030, at *6.  Instead, a reasonable basis analysis "may include an

examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

Deciding whether a claim was brought in good faith and had a reasonable basis "is within the discretion of the Special Master*." Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 582 (2016), *aff'd*, 875 F.3d 632 (Fed. Cir. 2017) (quoting *Scanlon v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 629, 633 (2014)).  However, the Federal Circuit has clarified in *Simmons* that the reasonable basis determination is "an objective inquiry unrelated to counsel's conduct."  875 F.3d at 636.  Moreover, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim."  *Turner*, 2007 WL 4410030, at *6 (citing *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).

## V.   Discussion

### A. Temporal Association

Since petitioner did not allege a Table injury, he had the burden of proving by a preponderance of the evidence that his January 13, 2015 vaccination either caused or aggravated his alleged injury.  Each will be addressed in turn.

#### i.   Cause in Fact

If petitioner intended to establish causation in fact, then he was required to establish "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  In that regard, petitioner alleged in his petition that he began to notice "worsening tingling sensations in his legs and lower abdomen" "approximately two weeks after the vaccination."  (ECF No. 1, p. 1.)

However, the petition did not cite to any medical record nor any affidavit from petitioner to support a two-week onset.  In fact, the medical records supported an onset of tingling approximately two years prior to petitioner's January 13, 2015 vaccination.  At a November 12, 2014 visit at Health Clinics of Utah, petitioner reported a "1 and ½ year history of tingling in his toes. After 1 year, he felt it up to his knees."  (Ex. 6, p. 13.)  He also reported that in the three months prior to the November 12th visit, the tingling had

4

"progressed to his lower chest and hands starting with the thumbs and now spreading over the 2nd and 3rd fingers."  (*Id.*)

Almost immediately after the petition was filed, on August 23, 2017, Special Master Millman issued an order detailing her concerns with the case, specifically highlighting the issue of onset and petitioner's pre-existing conditions.  (ECF No. 9.) Special Master Millman explained that "[r]epeatedly, petitioner put the onset of his neurologic symptoms in 2013, which is two years before the vaccination at issue."  (ECF No. 9, p. 1.)  The Special Master then suggested that petitioner's counsel review the medical records.  (*Id.*)  Petitioner subsequently filed an affidavit on September 21, 2017 averring that his transverse myelitis and neuromyelitis optica were caused by his Tdap vaccine; however, even after the Special Master's order, he did not address the issue of onset.  (Ex. 8.)  Petitioner was also provided the opportunity to file an expert report to support his claim.  Petitioner never filed an expert report, anything suggesting a two-week onset, or anything addressing the issue of onset at all.

Instead, in his reply brief on the instant motion, petitioner maintains that his symptoms, which would be eventually diagnosed as TM and NMO, "either began or became significantly more severe on March 5, 2015," which is 52 days post vaccination. (ECF No. 38, p. 2.)  However, petitioner's records contradict this claim as well, as it is clear by petitioner's earlier reports that his symptoms were progressive and began as early as 2013.  (Ex. 6, p. 13.)  Moreover, petitioner's March 5, 2015 visit was in follow up to his previously diagnosed diabetes mellitus.  (*Id.* at 16.) The problems assessed for that visit include Type II diabetes mellitus and paresthesia, but not TM or NMO. Accordingly, without further support in the medical records or from an expert report, the assertion that petitioner's complaints of increased numbness and tingling were attributable to onset of TM or NMO, rather than related to the pre-existing diabetes, is speculative.  When petitioner was later diagnosed with TM following an MRI, his neuropathy was still attributed to his diabetes.  (Ex. 5, p. 26.)  At that time, petitioner reported that his symptoms of numbness and tingling began three years prior, and no distinct onset of TM or NMO symptoms was recorded.  (*Id.*)

Pursuant to the Vaccine Act, a special master may not find in petitioner's favor "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion."  42 U.S.C. § 300aa-13(a)(1).  Petitioner here claims a two-week period of onset in his petition, but the records provided indicate an onset of the relevant symptoms occurring eighteen months prior to vaccination.  Thus, petitioner's claim of an onset of two weeks post-vaccination was wholly unsubstantiated by medical records. When the then-presiding special master pointed out the onset issue in this case,

petitioner was afforded the opportunity to file additional records, affidavits, or expert reports to help bolster his claim.  He did not.

      ii.  Significant Aggravation

Alternatively, petitioner maintains that there was reasonable basis to bring his claim under the theory of significant aggravation.  (ECF No. 38, p. 2.)  To prevail on a claim under the theory of significant aggravation, a petitioner must show preponderant evidence of

> (1) the person's condition prior to administration of the vaccine, (2) the person's current condition (or the condition following the vaccination if that is also pertinent), (3) whether the person's current condition constitutes a "significant aggravation" of the person's condition prior to vaccination, (4) a medical theory causally connecting such a significantly worsened condition to the vaccination, (5) a logical sequence of cause and effect showing that the vaccination was the reason for the significant aggravation, and (6) a showing of a proximate temporal relationship between the vaccination and the significant aggravation.

*Loving ex rel. Loving v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 135, 144 (2009).

Petitioner filed no objective medical evidence to support a theory of significant aggravation.  Petitioner emphasizes the March 5, 2015 medical record where petitioner reports "increased difficulty with numbness," however, as discussed above, this was reported in the context of a follow up for Type II diabetes and none of his medical records attribute these symptoms to his later diagnosed TM and NMO.  Moreover, at his next visit in December 2015, petitioner noted significant improvement related to management of his diabetes.  (Ex. 6, p. 18.)  The physician assistant recorded that while petitioner had reported significant symptoms of neuropathy up to the waist or chest level during the first visit, at the December 2015 visit, he reported significant improvement "following a chiropractic adjustment and getting the diabetes under control".  (*Id.*)  Furthermore, at the time he was diagnosed with TM and NMO, petitioner noted that his numbness and tingling had been significantly increasing years before the date of vaccination.  He reported "electrical flutters" which started "in his toes three years ago, after one year it had moved up to his ankles and then started progressing faster."  (Ex. 5, p. 23.)

On the whole, petitioner's medical records filed with the petition reflect that his symptoms consistently progressed beginning in 2013.  Apart from the March 5, 2015

record, petitioner does not point to any record in which petitioner's symptoms increased or were aggravated following vaccination, and further does not provide any objective evidence linking petitioner's condition to the vaccination.  A petitioner does not demonstrate a significant aggravation claim if his medical history is consistent with the expected or normal course of his condition.  *See Locane v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 715 (2011).

## B.  There is no Medical or Expert Opinion Supporting Causation

Finally, regardless of whether he claims significant aggravation or causation-in-fact, no medical professional ascribed petitioner's TM or NMO to his Tdap vaccination. Petitioner cites to *Austin v. Secretary of Health & Human Servs.*, No. 10-362V, 2013 WL 659574 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) for the proposition that "the history of settlements in particular types of cases may provide a reasonable basis for filing a claim, even in the absence of a medical opinion or medical records supportive of vaccine causation."  (ECF No. 38, p. 8.)  However, in *Austin*, the special master was clear that "[t]he only notation that salvage[d] the reasonable basis for th[e] case is the one medical record suggesting a link between [petitioner's] seizures and her vaccination."  2013 WL 659574, at *11.  The special master went on to conclude that there was a reasonable basis in *Austin*, "albeit an extremely weak one."  *Id.*

In contrast, the current petitioner has not filed any expert report supporting his claim, nor has he filed any record with any notation suggesting a link between petitioner's condition and his Tdap vaccination.  Moreover, the medical records filed in the *Austin* case suggested a temporal association between the vaccination and the injury. Here, no such association exists for all the reasons discussed above.  This makes the rationale in *Austin* much less compelling in this specific case.

## VI.    Conclusion

Accordingly, I find that petitioner had no reasonable basis to bring this claim, as the claim was not feasible.  In light of all of the above, petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made.


**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master